PHILLIP A. TALBERT
Acting United States Attorney
ALSTYN BENNETT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>WADE D. AMESBURY,<br><br>　　　　　　Defendant. | CASE NO. 2:21-CR-00145-JDP<br><br>PLEA AGREEMENT PURSUANT TO F.R.Cr.P. 11(c)(1)(B)<br><br>DATE: September 28, 2021<br>TIME: 10:00 a.m.<br>COURT: Hon. Jeremy D. Peterson |

## I.　　INTRODUCTION

### A.　Scope of Agreement

The Information in this case charges the defendant with four counts: (1) 18 U.S.C. § 111(a) – Assaulting, Resisting, and Impeding Certain Officers and Employees (Count One); (2) 16 U.S.C. § 551 and 36 C.F.R. § 261 – Interfering with Forest Officer While Engaged in Official Duties (Count Two); 16 U.S.C. § 551 and 36 C.F.R. § 261.10(f) – Placing a Vehicle and Other Object in a Manner that is an Impediment and Hazard to the Safety of Any Person (Count Three); and 16 U.S.C. § 551 and 36 C.F.R. § 261.12(d) – Blocking, Restricting, and Interfering with the Use of a Road, Trail, and Gate (Count Four).

This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory

authorities.

## B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to Count One of the Information. Count One charges the defendant with a violation of 18 U.S.C. § 111(a) – Assaulting, Resisting, and Impeding Certain Officers and Employees. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Sentencing Recommendation

The defendant agrees to jointly recommend with the government that he be sentenced to five (5) months of imprisonment.

### C. Fine

The parties agree that waiving the fine is appropriate in this case.

### D. Special Assessment

The defendant agrees to pay a special assessment of $25.00 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these

options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.   THE GOVERNMENT'S OBLIGATIONS

#### A.   Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Information. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement) and VII.B (Waiver of Appeal) herein.

#### B.   Recommendations

##### 1.   Incarceration Range

The parties jointly recommend that the defendant be sentenced to a period of five (5) months of imprisonment. The government may recommend whatever it deems appropriate as to all other aspects

of sentencing.

2. Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

As to Count One of the Information, Assaulting, Resisting, and Impeding Certain Officers and Employees, in violation of 18 U.S.C. § 111(a):

1. The defendant forcibly assaulted a United States Forest Service Law Enforcement Officer Brian Donnelly; and
2. The defendant did so while Officer Donnelly was engaged in, or on account of his official duties.

The defendant fully understands the nature and elements of the crime charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

V. **MAXIMUM SENTENCE**

A. **Maximum Penalty**

The maximum sentence that the Court can impose is up to one (1) year in prison, a fine of up to $100,000, a one-year period of supervised release, and a special assessment of $25.00.

B. **Violations of Supervised Release**

If the Court imposes a term of supervised release, the defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 1 additional year in prison.

VI. **SENTENCING DETERMINATION**

A. **Statutory Authority**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Estimated Guideline Calculation**

The government and the defendant agree that the following is their present best estimate of the Sentencing Guidelines variables. These estimates shall not be binding on the Court, the Probation Officer, or the parties:

1. Base Offense Level: 7 (§ 2A2.3(a)(1), Assault with physical contact)
2. Specific Offense Characteristics: 2 (§ 2A2.3(b)(1)(A), Assault with bodily injury)
3. Acceptance of Responsibility: -2 (§ 3E1.1(a), *See* paragraph III.B.2 above.)
4. Adjusted Offense Level: 7

5. <u>Criminal History</u>:  The parties estimate, but do not stipulate, that the defendant's criminal history category will be III:

- November 19, 2011 sentence to 10 days imprisonment for Make/Pass Fictitious Check in Butte County, California, in violation of California Penal Code § 476 (+1)

- July 29, 2016 sentence to 90 days imprisonment for Possession of a Stolen Vehicle in Lewis County, Washington, in violation of Revised Code of Washington 9A.56.068104 (+2)

- Defendant was on state probation administered by Placer County at the time of the instant offense (+2)

6. <u>Estimated Sentencing Range</u>:  4-10 months.  The defendant understands that if the criminal history category differs from the parties' estimate, his Guidelines sentencing range may differ from that set forth here.

The defendant also agrees that the application of the United States Sentencing Guidelines to his case results in a reasonable sentence and that the defendant will not request that the Court apply the sentencing factors under 18 U.S.C. § 3553 to arrive at a different sentence than the five (5) months jointly recommended by the parties.  The defendant acknowledges that if the defendant requests or suggests in any manner a different sentence than the five (5) months imprisonment he is bound to recommend, that will be considered a violation of the plea agreement.  The government's remedies and remaining obligations in this agreement shall be outlined in paragraph II.E, above.

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea,

conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the Magistrate Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

C. **Waiver of Attorneys' Fees and Costs**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

///

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

/ / /

/ / /

/ / /

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 9/12/2021

LINDA C. ALLISON
Assistant Federal Defender
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 09/12/2021

WADE D. AMESBURY, Defendant

### C. Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: 9-15-2021

PHILLIP A. TALBERT
Acting United States Attorney

By: ALSTYN BENNETT
Assistant United States Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

As to Count One, Assaulting, Resisting, and Impeding Certain Officers and Employees, in violation of 18 U.S.C. § 111(a):

On July 25, 2021 at approximately 9:00 p.m., two fire lookout towers reported a fire in the area of Backbone Road and Graniteville Road in the Tahoe National Forest, State and Eastern District of California. Fire resources, including Forest Service and CalFire, responded to the area. Upon arrival, a CalFire Captain was walking through the vegetation to inspect the fire when a white male adult, later identified as defendant WADE D. AMESBURY, jumped up and began running at the captain with his hands up and screaming. AMESBURY stopped short of the fire captain, and when the fire captain asked him his name, AMESBURY provided the name "Christopher," laughed, and walked away.

Later, the fire captain who initially encountered AMESBURY attempted to gain access to the fire with a Forest Service Battalion Chief via a vehicle on the unpaved forest service road that led to it. As the pair was driving toward the fire, they observed AMESBURY and another white male adult, later identified as Micah Osbourne, embracing and crying while sitting in the middle of the road, effectively blocking the path of the vehicle on the road. The fire captain and Battalion Chief got out of the vehicle and attempted to convince AMESBURY and Osbourne to move, but the two males did not move. The fire captain and Battalion Chief got back in their vehicle and found a way to drive around the pair by driving off the road and through the vegetation to continue to the fire.

At approximately 9:15 p.m., other firefighters, crews, and fire engines had arrived to assist in the suppression of the fire. They also found AMESBURY and Osbourne laying partially across the road, blocking the road such that the large fire engines could not pass due to the size of the road and its bordering trees. One of the firemen asked AMESBURY and Osbourne to move, but they continued to lay in the middle of the road.

At 9:25 p.m., Forest Service Law Enforcement Officer Brian Donnelly arrived on the scene and found a line of emergency fire vehicles, including both Forest Service and CalFire, waiting on the road leading to the fire approximately a quarter mile from the actual fire location. Officer Donnelly walked to the front of the line and observed both AMESBURY and Osbourne laying with their lower bodies in the road, making it impossible for the large emergency vehicles to pass.

Officer Donnelly contacted AMESBURY and Osbourne and detained them in handcuffs. In order to clear the road, Officer Donnelly moved AMESBURY and Osbourne out of the middle of the road by helping them stand up, directing them to sit along the side of the road, and instructing them to tuck their feet in so that the fire engines could pass by. At this point, the engines were able to move past AMESBURY and Osbourne and continue to the fire's location to begin their suppression efforts.

Once on the side of the road, AMESBURY began attempting to move his handcuffed hands from behind his back to the front of his body several times. At one point, AMESBURY successfully moved his hands to the front of his body and began trying to walk away. Officer Donnelly gave AMESBURY instructions to stop, and placed his hands on AMESBURY's left arm and the back of his shirt in an attempt to put AMESBURY back into a seated position on the ground. In response, AMESBURY quickly bit Officer Donnelly's forearm in between his wrist and elbow. Officer Donnelly yelled for help and attempted to pull his arm from AMEBSURY's mouth, but was unable to get AMESBURY to stop biting him. Officer Donnelly then drew his taser from its holster and deployed it into the upper right of AMESBURY's back. As soon as the taser was deployed, AMESBURY finally released Officer Donnelly's arm from his mouth.

Officer Donnelly sustained bodily injury as a result of AMESBURY's bite. The bite to his forearm was approximately 4 ½ inches by 3 ½ inches, broke the skin, and drew blood.

I have read the factual basis contained in Exhibit A and, as far as my own conduct is concerned, adopt it as a true and correct statement of my conduct and crime.

Dated: 09/12/2021

*/s/ WADE D. AMESBURY*, Defendant